# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPERT FLOWERS, | Case No. 1:16-cv-01363-BAM (PC) |
| Plaintiff, | SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| DAVE DAVEY, et al., | |
| Defendants. | (ECF No. 10) |
| | **THIRTY (30) DAY DEADLINE** |

Plaintiff Rupert Flowers ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on September 15, 2016. (ECF No. 1.)  Plaintiff has consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (ECF No. 14.)  Plaintiff's first amended complaint, filed on December 6, 2016, is before the Court for screening.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C.

1

§ 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Complaint**

Plaintiff is currently housed at California Substance Abuse Treatment Facility at Corcoran, CA.  The incidents at issue in this litigation occurred while Plaintiff was housed in Corcoran State Prison.

Plaintiff names as defendants:   D. Davey, Warden, Corcoran State Prison; E. Clark, M.D., medical care provider; Rifanna, RN, registered Nurse; C. McCabe, M.D., Chief Physician and Acting Chief Medical Officer; and Does 1-10 (persons responsible for medical care).

Plaintiff alleges that on December 3, 2014, Plaintiff was assaulted while handcuffed by correctional officers.  On December 4, 2014, plaintiff had an x-ray which determined by physician W. Ulit, Dr. R. Water, and Dr. Beresgovskaya that Plaintiff had a right mandibular

2

fracture of the jaw. Plaintiff was transferred to San Joaquin Hospital and was left there untreated and then returned to the prison. Plaintiff went to see Dr. Sisodia on December 5, 2014 complaining of pain and inability to chew. Dr. Sisodia prescribed a soft food diet and supplement for 10 days, but plaintiff never received the prescribed diet and lost 10 pounds. On December 9, Plaintiff again was x-rayed and found to "still" have a fractured jaw and was transferred to San Joaquin Hospital. But on December 10, 2014, Plaintiff was again discharged without treatment and continued to experience severe jaw pain and inability to chew.

In February, plaintiff began feeling complications in the facial region such as extreme nasal congestion, loss of taste and smell, headaches, bad breath and shortness of breath. Plaintiff saw Dr. Clark on March 19, 2015, and Dr. Clark said it was just allergies. On April 24, 2015, Plaintiff complained again to Dr. Clark of the same symptoms, and Dr. Clark gave him a nasal spray and nothing else. Plaintiff had to breathe through his mouth for oxygen, and used the nasal spray, but all his symptoms remained.

On June 8, 2015, Plaintiff again saw Dr. Clark and showed Dr. Clark information from Dr. Freeman about Plaintiff's fractured jaw and complications that could set in. Dr. Clark became angry and accused Plaintiff of just wanting money and that Dr. Clark said that Plaintiff's symptoms were not related to a fractured jaw and told Plaintiff to leave.

Throughout June 2015, Plaintiff repeatedly complained, through health care requests, about the same symptoms which were getting worse. On June 30, 2015, Plaintiff again met with Dr. Clark and begged for treatment for the fractured jaw and treatment for the complications. Dr. Clark said that Plaintiff is normal, and it was all in Plaintiff's mind.

Plaintiff submitted additional health care requests in July and August 2015 requesting medical assistance. Plaintiff submitted letter to Defendant D. Davey and Chief Physician and Surgeon C. McCabe about his complications.

On July 9, 2015, Plaintiff saw his mental health counselor who told him that the Doctors believe it is all in his head. On July 13, 2015, Plaintiff saw Dr. Mathos who said his condition was serious and ordered antibiotics. Due to constant pain, loss of sleep, restricted activities, Plaintiff continued to request medical care but was told it was all in his head, leaving Plaintiff

feeling dejected and suicidal. Plaintiff went to crisis bed on July 16, 2015. He was given a CT scan of the facial region and on August 9, 2015 was reported he had paranasal sinuses with extensive opacification in the ethmoid air cells. Plaintiff saw Dr. Clark on August 14, 2015 and Dr. Clark did not see compelling risk for urgent care. Dr. Clark said he would schedule Plaintiff for an ENT specialist and did not schedule Plaintiff for an urgent ENT consultation but scheduled it only as routine.

Plaintiff continued to submit medical request forms and letters to the warden. On October 19, 2015, Plaintiff saw the ENT specialist Dr. Stillwater who evaluated Plaintiff and ordered another CT scan of the sinuses and tests to rule out "allergies." Dr. Akanno prescribed antibiotics on October 20, 2015. A CT scan and tests for allergies were performed on December 7, 2015 which resulted in a report of "mild/moderate pansinus disease primarily involving the ethmoid sinuses, and obscuration of the ostiomeatal." Dr. Akanno requested that Plaintiff be sent back to Dr. Stillwater for further treatment. Plaintiff saw Dr. Stillwater on February 29, 2016, who opined that Plaintiff does not have any significant allergic disease but that since the combination of the topic spray, antibiotics or short burst of steroids are not effective, Plaintiff may be a surgical candidate for both nasal septoplasty and endoscopic sinus surgery. On March 7, 2016, Dr. Akanno recommended surgery as "urgent," but reported to Plaintiff that surgery is expensive and it may not get approved. Dr. McCabe did not agree with Akanno and sent Plaintiff to Dr. Kitt on March 15, 2016 who had not reviewed Plaintiff's medical records and did a 3 second exam and made findings contrary to the CT scan that Plaintiff did not need surgery.

Plaintiff continued to submit requests for medical assistance and RN McGrew told Plaintiff that there was not much she could do for him and that he had an ENT scheduled by June 21, 2016. Plaintiff was prescribed the same medications by Dr. Clark that Plaintiff was telling him were not working. Plaintiff continued to submit requests for medical care and used the grievance process. Plaintiff also submitted additional letters to the Warden and Dr. McCabe, Chief Physician, in April 2016 and attached Dr. Stillwater and Dr. Akanno's medical reports to the letters and neither the Warden nor Dr. McCabe responded. Dr. Clark continued prescribing the same "allergy" medications that Plaintiff said were not working.

4

Plaintiff continued to submit requests for medical care and his family submitted letters to Warden Davey and Dr. McCabe.

On June 13, 2016, Plaintiff was examined by ENT specialist, Dr. Goodman. Dr. Goodman opined that since Plaintiff fails all modes of therapy that he recommended endoscopic sinusotomy. Dr. McConnell submitted two requests to Dr. McCabe for surgery for Plaintiff. In August 2016, Plaintiff was examined by I. Mathos, NP who opined Plaintiff required surgery. Plaintiff is still being delayed medical treatment and has had to endure months of nose congestion, shortness of breath, loss of smell and taste and headaches. On September 16, 2016, Plaintiff was examined by Dr. D. Nguyen, M.D. who submitted a request for services requesting "endoscopic sinusotomy" as urgent for Plaintiff. Plaintiff has not received the requested care.

Plaintiff asks for injunctive relief and damages.

**I.     Discussion**

**A. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff has failed to link Defendant Rihanna to any constitutional violation. In addition, Plaintiff lists numerous other physicians and other medical providers in the factual allegations,

5

such as Dr. Water, L, Arakaki, Dr. M. Freeman, among others. Plaintiff is reminded that Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant be named in the caption of the complaint. A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief...." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Various individuals are not named in the caption, and the Court will not assume that Plaintiff intends to proceed against those not so named. If Plaintiff wishes to pursue such allegations, he may amend his complaint and include all named defendants in the caption as well as stating factually plausible claims in the body of the amended complaint.

Further, Plaintiff has listed Doe Defendants but has failed to allege factual allegations against Doe defendants for any constitutional violation. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for the Doe Defendant.

**B. Supervisory Liability**

To the extent Plaintiff seeks to hold Defendant D. Davey and Defendant McCabe, the Chief Physician (or any other defendant) liable based upon their supervisory positions, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted),

abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff has not alleged that Defendant Warden D. Davey or Defendant McCabe, the Chief Physician, was personally involved in an alleged Constitutional deprivation, or that any of them instituted a deficient policy. Plaintiff will be granted leave to amend, to the extent he can do so in good faith.

**C. Deliberate Indifference to Serious Medical Needs**

Plaintiff alleges being denied adequate medical care.

Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer, 511 U.S. at 832-33, 114 S. Ct. at 1976 (internal citations and quotations omitted). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle, 429 U.S. 97, 104, 97 S. Ct. at 291(1976)). Plaintiff must show (1) a serious medical need and (2) defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th. Cir 1992).

"Deliberate indifference is a high legal standard. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In the context of claims against medical providers, a prisoner's claim of inadequate medical attention must rise beyond negligence or misdiagnosis, to a level of "deliberate indifference to serious medical needs." Id. (quoting Estelle, 429 U.S. at 104, 97 S. Ct. at 291). A complaint of medical malpractice or that a physician has negligently diagnosed or treated a medical condition does not state a valid claim under the Eighth Amendment. Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012.)

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding

7

treatment does not give rise to a [§] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm, 680 F.3d at 1123 (awareness of need for treatment followed by unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances.)

Finally, delays in providing medical care may manifest deliberate indifference. See Estelle, 429 U.S. at 104-05. However, to establish a deliberate indifference claim arising from a delay in providing medical care, a plaintiff must allege facts showing that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett, 439 F.3d at 1096.

Dr. Clark

Plaintiff's allegations are insufficient to state a claim against Dr. Clark. On March 19, 2015 and April 24, 2015, Plaintiff complained to Dr. Clark, and Dr. Clark treated him for allergies by giving him a nasal spray. On June 8, 2015, Plaintiff saw Dr. Clark who disagreed with other doctor's findings and stated that Plaintiff's complaints were in his head. Around June 21, 2016, Plaintiff was again prescribed the medications by Dr. Clark, albeit Plaintiff said that that the medications were not working, but Plaintiff he also alleges Dr. Clark referred him to specialists during this same time. Plaintiff again saw Dr. Clark on August 14, 2015 who did not see compelling risk for urgent care, but scheduled Plaintiff for an ENT specialist.

Each time Plaintiff saw Dr. Clark, some form of treatment or a referral was provided. A

prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Unless a medical provider knows that failing to act poses a substantial risk of serious harm, his decision to "wait and see" is not unconstitutional, even where it proves ineffective. See Fryman v. Traquina, No. CIV S–07–2636 2011 WL 475872, at *11 (E.D.Cal. Feb. 4, 2011) (decision to treat gynecomastia by observation and regular mammograms, rather than surgery, did not demonstrate deliberate indifference). Plaintiff is complaining that he did not receive the treatment he wanted and is complaining of a disagreement with the treatment provided. Plaintiff's disagreement with, and request for alternate forms of treatment, do not state a cognizable Eighth Amendment claim. Plaintiff has alleged facts that the various doctors, including specialists, preferred conservative treatment before surgery, and then ultimately recommended surgery. To state an Eighth Amendment claim based upon a difference in medical treatment, Plaintiff must allege facts that treatment the doctor chose was medically unacceptable under the circumstances.   Given the varying medical opinions, Plaintiff has failed to do so.

Plaintiff's real objection is that he was not referred to surgery to treat his sinus problems. This issue goes to whether proper medical treatment was given. Estelle, 429 U.S. at 107 (question of "whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray…does not represent cruel and unusual punishment. At most it is medical malpractice..."). A claim that defendant Dr. Clark engaged in improper medical treatment is a claim for medical malpractice which is not cognizable under the Eighth Amendment.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Plaintiff will be granted leave to amend.

<u>Defendant Warden Davey and Chief Physician McCabe</u>

Plaintiff sues Warden Davey and Dr. McCabe for inadequate care.

Plaintiff's allegations as to Defendant Davey and McCabe are conclusory. Plaintiff alleges he and his family wrote numerous letters to defendants about his medical care but Plaintiff never heard anything back from the Defendants.

In order to hold these Defendants liable, Plaintiff must allege facts as to each Defendant indicating that they knew of and disregarded a serious medical condition of Plaintiff's. Assuming Plaintiff had alleged facts demonstrating that his treating physicians were deliberately indifferent to a serious medical need does not necessarily demonstrate awareness of the alleged violation by these defendants. <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1086-87 (9th Cir. 2014). Plaintiff must allege facts indicating that each Defendant knew of and disregarded a serious risk to Plaintiff's health. He does not allege that his letters reached Defendant Davey and Defendant McCabe and that each defendant read these letters such that they knew Plaintiff was in serious risk to Plaintiff's health. Rather, Plaintiff seeks to hold them liable in their roles as supervisors, which as stated above, he is not permitted to do.

**D. Retaliation**

Plaintiff sues Defendants Warden Davey, Dr. Clark and Dr. McCabe and Does 1-10 for unlawful retaliation. Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted). At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' " <u>Id.</u> at 568, quoting <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999). However, direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First

Amendment rights. Rhodes, at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n.11.

Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. Filing administrative grievances and initiating litigation are protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567-68.

Plaintiff alleges that defendant Davey, Dr. Clark, and Dr. McCabe and Does 1-10 acted in retaliation because 1) plaintiff filed complaints about misconduct including appeals, medical board, government claim board, inspector general, among others, 2) plaintiff is suing their colleagues which they are "well informed," 3) they knew Plaintiff was going to seek civil action against them, and 4) plaintiff's "damages are non-suitable to their liability."

Plaintiff alleges that "defendants retaliation has resulted to, through the manifestation of their actions: 1) depriving Plaintiff of his right adequate medical care; 2) interfering with medical care prescribed by a physician, 3) delay in treatment, 4) exposing Plaintiff to exacerbating injuries; and 5) denying treatment."

The Court does not find that Plaintiff has stated a cause of action for retaliation against Defendants. There is no indication that these defendants denied Plaintiff's request because of any protected conduct.  Plaintiff fails to allege facts to show that any of the defendants had knowledge of his prior grievance and/or litigation activities.  Plaintiff also fails to establish that defendants took an adverse action against Plaintiff because of any protected conduct or exercise of his constitutional rights. Plaintiff's conclusory statement that they were "well informed" is

insufficient. The Court is not required to infer that because he did not get the treatment he desired, he was retaliated against by Defendants. It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, but the mere possibility of misconduct is not sufficient, Iqbal, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Thus, Plaintiff's mere allegations that he engaged in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

### IV. Conclusion and Order

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff is granted an opportunity for leave to file an amended complaint within **thirty (30) days**. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in and of itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Plaintiff's first amended complaint, filed December 6, 2016, is dismissed for failure to state a claim;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint or a notice of voluntary dismissal; and
4. **If Plaintiff fails to file a second amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and to obey a court order**.

IT IS SO ORDERED.

Dated: **July 14, 2017**        /s/ *Barbara A. McAuliffe*
                         UNITED STATES MAGISTRATE JUDGE